To Be Argued By:
MICHAEL R. MAFFEI

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Docket No. 25-346

UNITED STATES OF AMERICA,

*Appellee,*

-against-

JUAN VILLAR,

*Defendant,*

DIMITRIY NEZHINSKIY,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

THE GOVERNMENT'S RESPONSE TO DEFENDANT-APPELLANT'S
MOTION FOR BOND PENDING TRIAL

JOHN J. DURHAM,
*United States Attorney,*
*Eastern District of New York*
271-A Cadman Plaza East
Brooklyn, New York 11201
(718) 254-7000

SARITHA KOMATIREDDY,
MICHAEL R. MAFFEI,
KATHERINE P. ONYSHKO,
SEAN M. SHERMAN
*Assistant United States Attorneys,*
     (*Of Counsel*).

i

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................ii

PRELIMINARY STATEMENT ..............................................................1

STATEMENT OF FACTS .....................................................................3

    I.    Nezhinskiy's Charged Conduct and Criminal History ...............................................................................3

    II.   Nezhinskiy's Motion and Government's Opposition ..................................................................4

    III.  The District Court's Decision ................................6

ARGUMENT .......................................................................................10

    I.    Applicable Law ...........................................................11

        A.   Standard of Review .........................................11

        B.   Bail Reform Act ................................................12

    II.   The District Court Did Not Commit Clear Error In Applying the § 3142(g) Factors ......................13

        A.   The Nature and Circumstances of the Offense ...............................................................13

        B.   History and Characteristics .........................15

        C.   Weight of the Evidence ..................................15

        D.   Danger Posed by Nezhinskiy's Release .......16

    III.  Nezhinskiy is Also a Flight Risk .............................17

CONCLUSION .....................................................................................19

ii

# TABLE OF AUTHORITIES

Page

## CASES

Anderson v. Bessemer City, N.C.,
   470 U.S. 564 (1985) ................................................................. 11

Easley v. Cromartie,
   532 U.S. 234 (2001) ................................................................. 11

Headley v. Tilghman,
   53 F.3d 472 (2d Cir. 1995) ..................................................... 17

United States v. Abuhamra,
   389 F.3d 309 (2d Cir. 2004) ................................................... 11

United States v. Ferranti,
   66 F.3d 540 (2d Cir. 1995) ..................................................... 13

United States v. Martir,
   782 F.2d 1141 (2d Cir. 1986) .................................... 11, 13, 18

United States v. Millan,
   4 F.3d 1038 (2d Cir. 1993) ..................................................... 17

United States v. Orena,
   986 F.2d 628, 632 (2d Cir. 1993) .......................................... 18

United States v. Sabhnani,
   493 F.3d 63 (2d Cir. 2007) ..................................................... 13

## STATUTES

18 U.S.C. § 371 ..................................................................... 2, 3

18 U.S.C. § 2315 ................................................................... 2, 3

18 U.S.C. § 3142 ............................................................. passim

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Docket No. 25-346

———————————————

UNITED STATES OF AMERICA,

*Appellee,*

-against-

JUAN VILLAR,

*Defendant*

DIMITRIY NEZHINSKIY,

*Defendant-Appellant.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

THE GOVERNMENT'S RESPONSE TO DEFENDANT-APPELLANT'S
MOTION FOR BOND PENDING TRIAL

## PRELIMINARY STATEMENT

Defendant-Appellant Dimitriy Nezhinskiy appeals from a judgment entered on February 7, 2025, in the United States District Court for the Eastern District of New York (Kuntz, J.), denying bail. Nezhinskiy has been in custody for one month, since February 4, 2025,

2

when he was arrested and charged with one count of conspiracy to receive stolen property (18 U.S.C. § 371) and three counts of receipt of stolen property (18 U.S.C. § 2315), for creating and operating a marketplace for goods stolen from burglaries and thefts nationwide. Nezhinskiy is also an illegal alien with an extensive criminal history, who an immigration judge ordered removed in 2003.

On appeal, Nezhinskiy argues that the district court erred in declining to release him on bond. As we show below, Nezhinskiy's argument lacks merit.

<u>STATEMENT OF FACTS</u>

I.    <u>Nezhinskiy's Charged Conduct and Criminal History</u>

Nezhinskiy was arrested on February 4, 2025, after a grand jury returned an indictment charging him and his co-conspirator, Juan Villar, with one count of conspiracy to receive stolen property, in violation of 18 U.S.C. § 371, and three counts of receipt of stolen property, in violation of 18 U.S.C. § 2315. The charges arose out of Nezhinskiy's and Villar's operation of a "fencing" scheme—whereby they serve as knowing resellers (or "fences") for countless pieces of stolen merchandise taken from across the United States. (DE:1).[1]

In conjunction with Nezhinskiy's arrest, law enforcement agents executed search warrants at Nezhinskiy's business location and three storage units that Nezhinskiy used. During the execution of the search warrants, a large quantity of stolen property was uncovered. At the time of Nezhinskiy's indictment, at least $1.5 million of stolen property had been identified during the investigation of his properties, and law enforcement agents estimated that the total value of stolen items

---

[1]    "DE" and "Mot." refer to entries on the district court docket sheet and to Nezhinskiy's motion on appeal, respectively.

4

may rise to as high as $5 million once the goods are inventoried and valued. (Mot. Ex. A at 9-10). In addition to items with indicia of stolen property, which included upwards of 100 high-end watches, countless items of jewelry, luxury handbags, wine, paintings, and luxury clothing with the tags still on, a firearm was recovered from one of Nezhinskiy's storage units. (*Id.* at 12-14). Law enforcement agents recovered a large amount of cash, approximately $100,000, during the searches. (*Id.* at 24).

II. <u>Nezhinskiy's Motion and Government's Opposition</u>

On February 5, 2025, Nezhinskiy appeared before the Honorable Lara K. Eshkenazi, Magistrate Judge in the Eastern District of New York, for his arraignment. (Mot. Ex. A; DE:9). The government requested a permanent order of detention pending trial.

The government argued that: (1) Nezhinskiy posed a danger to the community through his creation of a market for residential burglaries and retail thefts, which market Nezhinskiy could continue to operate while on bail; (2) Nezhinskiy posed a risk of flight because he faced a substantial prison term and lacks legal status in the United States; (3) the evidence of Nezhinskiy's guilt was strong and included multiple video recordings made by an undercover detective

5

demonstrating that Nezhinskiy knowingly purchased stolen luxury goods for cash across several months; and (4) Nezhinskiy had access to substantial funds of an unknown source rendering a bail package inadequate to assure his appearance.  (DE:7; Mot. Ex. A at 24-25).

The government proffered additional details about Nezhinskiy's conduct and its dangerousness, noting that various sources of evidence connected Nezhinskiy's criminal operation to at least five separate burglary crews that operated throughout the United States over several years.  One of those crews had a member prosecuted in the Eastern District of New York in connection with 16 residential burglaries; not only did Nezhinskiy's operation incentivize such conduct generally, but Nezhinskiy purchased stolen goods from this burglar specifically.  (DE:7 at 2; Mot. Ex. A at 10-11).

The government also noted that Nezhinskiy was in the country illegally (he was ordered removed in 2003) and had a criminal history that included prior state convictions for second-degree robbery (for which he was imprisoned for 42 months), third-degree possession of a forged instrument, disorderly conduct, petit larceny, and driving while impaired.  (DE:7 at 3; Mot. Ex. A at 12-).

6

Nezhinskiy requested pretrial release. (DE:9). He proposed a $1 million bond secured by one surety (his father), a cash deposit of $150,000, and two condominiums. (*Id*.; Mot. Ex. A at 14-21). He argued that this was sufficient and warranted because he was not charged with a crime of violence because Nezhinskiy has a young daughter whom he takes to school. (Mot. Ex. A at 14-21).

The magistrate judge granted release on the proposed bond, with the additional condition of home detention. (Mot. Ex. A at 35-36). However, the magistrate judge deferred Nezhinskiy's actual release until liens were filed against the two properties securing his bond and the cash was deposited. (*Id.* at 31-32; DE:11).

III. <u>The District Court's Decision</u>

Two days later, on February 7, 2025, while Nezhinskiy was still in detention, the parties appeared before the district court (Judge Kuntz) for an initial status conference. (Minute Entry dated February 7, 2025). Judge Kuntz inquired if the government continued to believe detention was appropriate, and the government affirmed that it did. (Mot. Ex. B at 7-8). After hearing from the parties, Judge Kuntz ordered

7

Nezhinskiy and his co-defendant detained pending trial.[2]   (DE:21-23).
The district court initially provided its reasons orally, (Mot. Ex. B at 10-
20), and later in a written opinion (DE:23).

In its written opinion, the district court determined that the
government had met its burden of proving that Nezhinskiy "present[s] a
clear and present danger, an actual flight risk given the pernicious
international criminal connections presented to the grand jury, together
with the multi-state activities the Defendants stand accused of
committing with a coterie of international criminal actors."  (DE:23 at 8).

In reaching this conclusion, the district court analyzed the
four factors set forth in the Bail Reform Act:   (1) the nature and
circumstances of the crimes charged, "including whether the offense is a
crime of violence . . ."; (2) the weight of the evidence against the
defendant; (3) the history and characteristics of the defendant, including

---

[2]    While Nezhinskiy's counsel attempted to argue against
detention before the district court, the arguments advanced were
identical to the arguments advanced before the magistrate.  (Mot. Ex. A
at 14:20-15:7, Mot. Ex. B at 24:19-25:2 (not charged with a crime of
violence); Mot. Ex. A at 15:20-16:20, Mot. Ex. B at 25:3-15, 26:8-13 (father
as suretor); Mot. Ex. A at 16:21-17:7, Mot. Ex. B at 25:3-15 (minor
daughter)).

8

"whether, at the time of the current offense or arrest, the person was on probation [or] on parole"; and (4) the seriousness of the danger posed by the defendant's release. (*See* 18 U.S.C. § 3142(g); DE:23 at 4-7).

First, in evaluating the nature and circumstances of the offense, the district court analyzed the mountain of evidence detailing Nezhinskiy's conduct, including eyewitnesses, search warrant returns, phone-location information, and video surveillance. (DE:23 at 4). The district court articulated the "substantial risk of danger to the community" created by Nezhinskiy's marketplace for stolen items, which motivates others in the criminal network to engage in burglaries and thefts. (DE:23 at 5). The district court also considered the significant prison term that Nezhinskiy faced. (*Id.*). The district court found that the "nature and circumstances of the offense weigh clearly in favor of detention." (*Id.*).

Second, the district court reviewed the weight of the proffered evidence, including seven undercover sales of stolen goods to Nezhinskiy, eyewitness reporting of sales of stolen goods to Nezhinskiy, and phone and video surveillance connecting Nezhinskiy with two members of a known robbery crew. (*Id.* at 5-6). The district court found that the

9

strength of this evidence would likely lead to a conviction and a multi-year sentence and "weighs in favor of detention."  (*Id.* at 5-6).

Third, the district court assessed Nezhinskiy's history and characteristics, including the final order of removal in place and Nezhinskiy's prior convictions.  (*Id.* at 6-7).  The district court found Nezhinskiy's criminal history "demonstrate[s] a disregard for following the law that weighs in favor of detention."  (*Id.* at 7).

Finally, the court assessed the "nature and seriousness of the danger" to the community posed by Nezhinskiy's release.  (DE:23 at 7; *see* 18 U.S.C. § 3142(g)(4)).  The district court determined that Nezhinskiy's conduct, which involved "connections to organized criminal groups targeting homes across the United States and endangering our communities," favored detention.  (DE:23 at 7).

All considered, the district court found "by clear and convincing evidence [that] releasing [Nezhinskiy] prior to trial would endanger the community, and no condition or combination of conditions will reasonably assure community safety."  (*Id.* at 8).

Nezhinskiy appealed.

10

## ARGUMENT

The district court's order of detention pending trial should be affirmed. The district court properly detained Nezhinskiy pending trial after carefully weighing the relevant factors, considering Nezhinskiy's arguments, and finding that no reasonable conditions of release could be set to assure the safety of the community.

The district court did not err, clearly or otherwise, despite Nezhinskiy's claims that it should have (1) ignored the flexible nature of Nezhinskiy's fencing operation, which the government argued could continue via cell phone even with the shutdown of Nezhinskiy's business location, (2) given less weight to Nezhinskiy's criminal history, and (3) given more weight to the absence of aggravating factors. (*See* Mot. at 14-16). The highly individualized inquiry did not require the court to compare Nezhinskiy against other defendants in other matters. Here, the district court properly detained Nezhinskiy pending trial after carefully considering the relevant factors and finding that no reasonable conditions of release could be set to assure the safety of the community.

11

I.    Applicable Law

    A.    Standard of Review

This Court reviews a district court's denial of bail for clear error. *United States v. Martir*, 782 F.2d 1141, 1146 (2d Cir. 1986). That standard applies broadly, not just

> to the court's specific predicate factual findings but also to its overall assessment, based on those predicate facts, as to the risk of flight or danger presented by defendant's release. We defer to the district court on such matters because of its unique insights into the defendant as an individual and into his personal, professional, and financial circumstances.

*United States v. Abuhamra*, 389 F.3d 309, 317 (2d Cir. 2004) (citations omitted).

Reversal is not appropriate simply because this Court would have decided the case differently; rather, the question on clear-error review is whether, on the entire record, the Court "is left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citations omitted); *see also Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

12

B.   <u>Bail Reform Act</u>

Under the Bail Reform Act, a court must detain a defendant when "no condition or combination of conditions will reasonably assure the appearance of the person . . . and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Courts must consider four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

13

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The government is entitled to "proceed by proffer" in arguing for a defendant's detention. *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995). When a defendant does not "question the reliability of the government's proffer," the district court is justified to accept the "proffer as accurate." *Martir*, 782 F.2d at 1147.

In seeking pretrial detention, the government bears the burden of proving dangerousness by clear and convincing evidence and risk of flight by a preponderance of the evidence. *See* 18 § 3142(f); *see also United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007).

## II. The District Court Did Not Commit Clear Error In Applying the § 3142(g) Factors

The district court did not err in finding Nezhinskiy to be a danger to the community.

### A. The Nature and Circumstances of the Offense

Nezhinskiy and his co-defendant are charged with crimes that created a substantial risk to human life, as recognized by the district court, by running a market for goods deriving from residential burglaries

14

and retail thefts that create an acute risk of danger. By operating a cash-based marketplace for luxury and expensive stolen items, Nezhinskiy provided an incentive for individuals to commit burglaries and thefts, with the draw of a lucrative payday. Thus, Nezhinskiy's claim that he did not commit a crime of violence or a crime with aggravating factors (Mot. at 16) is incomplete: his conduct promoted victimizing individuals in their homes and endangering communities on a large scale. The danger to the safety of communities and risks of violence posed by residential burglaries is self-evident and overwhelming.

Furthermore, Nezhinskiy could operate this marketplace from anywhere. Even though law enforcement action had forced the closure of Nezhinskiy's previous business location, Nezhinskiy could still operate such a marketplace from home confinement. Nezhinskiy claims that it is "not possible to be a 'virtual fence'" (Mot. at 15), but there is no logical reason why that should be the case: all that is needed for a marketplace to thrive is Nezhinskiy's buying of stolen items and theft crews' bringing the items to a designated location. The marketplace can continue anywhere he is or virtually. The dangerousness is further emphasized by the firearm located during the search of a storage unit

15

used by Nezhinskiy. The district court engaged in a reasoned review of these factors, which support the determination of detention; no clear error occurred.

B.    History and Characteristics

The district court properly considered that Nezhinskiy's criminal history included crimes of violence, including a prior robbery conviction. Nezhinskiy disagrees with the weight the district court placed on this criminal history. (Mot. at 15). But that weight was appropriate, given the similarity between the robbery he committed in the past and the robberies his marketplace promoted in the instant offense. It was also appropriate specifically to refute the argument that Nezhinskiy made in support of bail, that the instant crime was not a crime of violence.

C.    Weight of the Evidence

The weight of the evidence counseled overwhelmingly in favor of the district court's decision to order Nezhinskiy detained. The government's evidence included, among many other items, audio- and video-recorded controlled sales of purportedly stolen items to Nezhinskiy, surveillance footage of theft groups visiting Nezhinskiy's business,

16

eyewitness testimony, electronic communications and data from Nezhinskiy's iCloud account, and vast quantities of items seized following the search of the business location and Nezhinskiy's storage units, including high-end watches, jewelry, handbags, art, sports memorabilia, luxury clothing with tags, and a gun. These are the exact types of items one would expect to be the proceeds of residential burglaries. After a recitation of some of the evidence, including the eyewitnesses and controlled sales, the district court properly concluded that the strength of the evidence weighs in favor of detention.

      D.   <u>Danger Posed by Nezhinskiy's Release</u>

Finally, the district court assessed the nature and seriousness of danger posed to the community should Nezhinskiy be released and properly concluded that this factor counseled in favor of detention. Nezhinskiy's conduct spanned years, as he worked with multiple theft groups committing robberies around the country. Nezhinskiy's connections to organized criminal groups which targeted homes across the country favor detention. Though Nezhinskiy may view the weight

17

that should be given to his conduct differently, there was no clear error in concluding that detention was necessary.[3]

III.    Nezhinskiy is Also a Flight Risk

While the district court focused its analysis on dangerousness, the district court also concluded that Nezhinskiy was "an actual flight risk" (DE:23 at 8), and in any event, this Court may affirm the detention order on any ground that is available in the record. *See, e.g.*, *Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir. 1995). The record supports a finding that Nezhinskiy is a flight risk. He faces a substantial sentence if convicted (up to five years on the conspiracy count and up to ten years on each substantive count), and the district court found that the weight of the evidence was sufficiently strong that Nezhinskiy would likely be convicted and face a multi-year sentence. Furthermore, he is an illegal alien subject to a final order of removal. Both facts provide a strong incentive to flee. *See United States v. Millan*, 4 F.3d 1038, 1046 (2d Cir. 1993) (where the evidence of guilt is strong, it provides "a considerable

---

[3]    Nezhinskiy's arguments about returning to court in his prior case and the impact of leaving his family in the United States do not bear on the correctness of Judge Kuntz's decision to deny Nezhinskiy release due to dangerousness.

18

additional incentive to flee"); *United States v. Martir*, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses with significant maximum terms had "potent incentives to flee").

Nezhinskiy argues that, as a practical matter, he could not flee the country. (Mot. at 11-12). However, this argument does not refute the risk that he could flee the jurisdiction while remaining in the country. And his arguments about returning to court in his prior case and the impact of leaving his family are less forceful now that he is facing a cumulative maximum of 35 years' of imprisonment and removal. Moreover, home detention does not sufficiently mitigate the risk of flight, as such monitoring is neither a failsafe system nor sufficient, on its own, to assure a defendant's appearance. *See United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993).

19

<u>CONCLUSION</u>

For the foregoing reasons, the district court's order of detention pending trial should be affirmed.

Dated:      Brooklyn, New York
            March 3, 2025

Respectfully submitted,

JOHN J. DURHAM,
*United States Attorney*
*Eastern District of New York.*

By:   /s/ MICHAEL R.
      MAFFEI
      MICHAEL R. MAFFEI
      Assistant U.S. Attorney


SARITHA KOMATIREDDY,
MICHAEL R. MAFFEI,
KATHERINE P. ONYSHKO,
SEAN M. SHERMAN
*Assistant United States Attorneys*,
      (*Of Counsel*).

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Second Circuit Rule 32.1(a)(4) because the brief contains 3,102 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated:   Brooklyn, New York
         March 3, 2025

                              /s/ SARITHA KOMATIREDDY
                              SARITHA KOMATIREDDY
                              Assistant U.S. Attorney