UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
---------------------------------------------------------------X

UNITED STATES OF AMERICA,                    Docket No. 25-346

                              Appellee,

      -- against --

DIMITRIY NEZHINSKIY,

                              Defendant-Appellant.

---------------------------------------------------------------X

### REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RELEASE ON CONDITIONS PENDING TRIAL

Defendant-Appellant DIMITRIY NEZHINSKIY, by and through the undersigned counsel, respectfully submits this Memorandum reply to the Government's Response (ECF Doc. 24) and in further support of his motion to be released or admitted to bail pending sentencing in the criminal case entitled <u>United States v. Nezhinskiy et. al.</u>, E.D.N.Y. Docket No. 25-CR-40-WFK (ECF Doc. 16).

In response to the Government's arguments, defendant-appellant turns first to the nature and circumstances of the offense, which was the most prominent factor in the decision below. The Government contends that Nezhinskiy could operate his alleged fencing ring "from anywhere," including from home confinement, because

1

"all that is needed… is Nezhinskiy's buying of stolen items and theft crews' bringing the items to a designated location." (ECF Doc. 24 at 14). What the government ignores, however, is that, assuming *arguendo* that the ring in fact exists, there *also* need to be physical meetings at which the burglary crews and Nezhinskiy exchange stolen goods for cash and at which customers subsequently pay cash to buy the goods. Fencing operations do not work on Venmo or Apple Pay. Moreover, fencing operations also require a secure location to store the stolen goods pending their sale.

      The Government apparently has visions of Nezhinskiy, under house arrest, meeting with burglars in his kitchen, storing the stolen goods in his basement, and opening a bazaar in his living room from which to sell them. To say the least, this is a fantasy. If Nezhinskiy is under home confinement, his residence will be subject to monitoring and unannounced search. Comings and goings of burglars and customers would certainly be noticed, and law enforcement could burst in any time and search for caches of stolen property. Moreover, there are conditions of release – for instance, video surveillance of all entrances to the house, phone and computer monitoring, or even an Internet ban – that can eliminate even the remote possibility of communicating with alleged accomplices and running a home-based fencing operation under the nose of law enforcement. This is thus not a valid reason to deny release pending trial, and the district court's total disregard of the actual logistics of fencing renders its decision an abuse of discretion.

2

Furthermore, the Government is wrong in characterizing the charged offense as a crime of violence (ECF Doc. 24 at 13-14). They argue that residential burglaries "create an acute *risk* of danger" (id.) (emphasis added), but ignore not only that there is no evidence of that risk actually materializing in this case but that the burglaries were allegedly timed for dates when it was known that the householders would not be at home. For instance, certain of the alleged burglaries involved professional athletes who were playing away games on the dates the burglaries allegedly occurred. The specter of violence, too, is therefore not a reason for denying release on conditions – especially since, as discussed above and in the original moving papers, there is no practical way for the alleged fencing ring to continue with Nezhinskiy on home confinement in any event.

The Government also overstates its case in claiming that Nezhinskiy's more-than-20-year-old robbery conviction has "similarity… to the robberies his marketplace promoted in the instant case." (ECF Doc. 24 at 15). This case did not involve *robberies*, which are forcible thefts from the person of others – it involved alleged *burglaries* in which no force is alleged to have been used against any other person (and indeed in which other persons were not present). A second-degree robbery conviction from more than two decades in the past, which remains Nezhinskiy's only felony conviction, thus has no meaningful bearing on whether he poses a risk of committing crimes of violence now or in the future.

3

Accordingly, this Court should find, for all the above reasons and for the reasons stated in the original moving papers, that the Government failed to meet its burden of proving that there exists no condition or combination of conditions which would reasonably assure the safety of the community if Nezhinskiy were released pending trial.

Finally, this Court should also reject the Government's contention that Nezhinskiy is a flight risk. Although the Government argues that Nezhinskiy faces up to 35 years in prison (ECF Doc. 24 at 17-18) but such a sentence is unlikely in the extreme given that, as the Government detailed below, his projected Sentencing Guideline range is in the 8 to 10 year range. Significantly, 8 to 10 years is less than the 15-year maximum that Nezhinskiy faced when he was charged with second-degree robbery in that case, so if he did not flee then, he certainly will not flee now. Furthermore, it is undisputed that Nezhinskiy cannot return to his home country, would have no legal protection in any third country, and does not have (and would be forbidden from obtaining) a passport in any event. Under these circumstances, it would verge on ludicrous to suggest that Nezhinskiy would jump bail, resulting in his father losing his life savings and his daughter never seeing him again. And unlike the <u>Orena</u> case cited by the government, Nezhinskiy is not a Mafia boss and does not have the resources to defeat home confinement measures. Again, there exist conditions of release which would be amply sufficient to alleviate risk of flight, and

4

this Court should thus order Nezhinskiy to be released on such conditions as it deems appropriate.

**WHEREFORE**, in light of the foregoing, this Court should issue an Order granting this motion in its entirety and granting such other and further relief to Defendant-Appellant as it may deem just and proper.

Dated:   New York, NY
         March 4, 2025

/s/ Jonathan I. Edelstein
JONATHAN I. EDELSTEIN

5

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies pursuant to Fed. R. App. Pro. 27(d)(1)(E), (d)(2), and 32(a)(7)(C) as follows:

1. This motion complies with the type-volume limitation of Fed. R. App. Pro. 27(d)(2)(A) because it contains 976 words exclusive of those parts of the motion exempted by Fed. R. App. Pro. 32(f).

2. This motion complies with the typeface requirements of Fed. R. App. Pro. 32(a)(5) and the type style requirements of Fed. R. App. Pro. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point type.

Dated:    New York, NY
          March 4, 2025

                                                  /s/ Jonathan I. Edelstein
                                                  JONATHAN I. EDELSTEIN